UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
───────────────────────────────

ANTHONY MEDINA,

                      Plaintiff,

                                                          Case # 14-CV-6377-FPG

v.

                                                          DECISION AND ORDER

JASON J. BARRETT, et al.,

                      Defendants.
───────────────────────────────

## INTRODUCTION

On July 10, 2014, Plaintiff Anthony Medina filed a Complaint against Defendants[1] alleging violations of 42 U.S.C. § 1983, the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and the Rehabilitation Act of 1973 ("Rehab Act"), 29 U.S.C. § 701 *et seq.* ECF No. 1. Specifically, Medina alleges twelve claims in five categories in his Complaint. *Id.*

First, Defendants Jason J. Barrett and D. McKeel violated Medina's Eighth Amendment rights by (1) using excessive force against him and (2) failing to intervene in the use of force. *Id.*, ¶¶ 14-16, 55.

Second, Defendants Barrett and McKeel conspired to falsify reports regarding the use of excessive force in violation of Medina's (3) Eighth and (4) Fourteenth Amendment rights. *Id.*, ¶¶ 17-20, 56. The conspiracy resulted in the denial of disability accommodations (5) in violation of Medina's rights under the ADA and Rehab Act. *Id.*

Third, at Medina's disciplinary hearing, Defendant Thomas Sticht (6) violated Medina's due process rights under the Fourteenth Amendment by failing to call material witnesses, provide adequate notice, allow Medina to be heard, and provide Medina with appropriate disability

---

[1] Jason J. Barrett, D. McKeel, Thomas Sticht, Karen Crowley, R. Killinger, and the New York State Department of Corrections and Community Supervision ("DOCCS").

1

accommodations during Medina's disciplinary proceeding. Defendants Sticht, DOCCS, and Karen Crowley (7) violated Medina's rights under the ADA by denying him disability accommodations at the disciplinary hearing. ECF No. 1, ¶¶ 21-37, 57-58.

Fourth, Defendants Sticht, DOCCS, and Crowley violated Medina's rights under the (8) Due Process and (9) Equal Protection Clauses to the Fourteenth Amendment, and (10) the ADA and Rehab Act, when they denied him disability accommodations while in the Special Housing Unit ("SHU"). *Id.*, ¶¶ 38-51, 59.

Finally, Defendant R. Killinger violated Medina's rights under the (11) Eighth Amendment, and (12) the ADA and Rehab Act, by denying him medical care. *Id.*, ¶¶ 52-54, 60.

This case has a long and complicated history. On June 15, 2015, Medina moved the Court to appoint counsel for him. ECF No. 8. Less than one week later, on June 24, 2015, Defendants filed a motion for summary judgment. ECF No. 9.

The Court then granted Medina's motion to appoint counsel and appointed Michael Harren, Esq., to represent him. ECF Nos. 16, 22.

On July 20, 2017, Mr. Harren responded to Defendants' motion for summary judgment. ECF No. 32. Medina filed a *pro se* response to Defendants' motion and moved to remove Mr. Harren as his counsel. ECF No. 33. Defendants replied to Mr. Harren's response the next day. ECF No 34.

On August 15, 2017, the Court held a status conference at which it denied Defendants' motion for summary judgment, directed them to answer the Complaint, and denied Medina's motion to remove Mr. Harren as Medina's counsel. ECF No. 36.

One week later, Defendants answered the Complaint and moved to dismiss Medina's fourth and eleventh[2] claims under Federal Rule of Civil Procedure 12(c). ECF Nos. 37, 38-1.

On October 3, 2017, the Court held another status conference at which Mr. Harren withdrew as Medina's counsel. ECF No. 45. Medina agreed to proceed *pro se* and the Court ordered him to respond to Defendants' motion by November 3, 2017. ECF Nos. 45, 47.

Medina responded to Defendants' motion to dismiss on January 2, 2018, and Defendants filed a reply to Medina's response two days later. ECF Nos. 51, 54.

On January 19, 2018, Medina again moved to appoint counsel. ECF No. 58.

Defendants' motion to dismiss under Federal Rule of Civil Procedure 12(c), ECF No. 38, and Medina's motion to appoint counsel, ECF No. 58, are currently before the Court.

---

[2] Defendants contend that there are only five claims in the complaint and that they are moving to dismiss the second and fifth claims. ECF No. 38-1 at 2. This is incorrect. Medina outlines all twelve causes of action in the "Claims for Relief" section of his complaint. ECF No. 1, ¶¶ 55-60. Because Defendants were challenging Medina's conspiracy claim under the Fourteenth Amendment and his denial of medical care claim under the Eighth Amendment in their motion to dismiss, the Court interprets Defendants' motion as moving to dismiss the identical claims actually in the complaint—the fourth and eleventh claims.

## BACKGROUND[3]

Plaintiff Anthony Medina is visually disabled. ECF No. 1 at 12. He suffers from the eye disease keratoconus,[4] which is associated with vogt striae,[5] photophobia,[6] and monocular diplopia.[7] *Id.* He also suffers from amblyopia[8] and may have glaucoma.[9] *Id.*

On August 12, 2012, at 2:10 p.m. in the yard of Wende Correctional Facility, Medina was involved in a physical altercation with another prisoner. After the altercation, Defendant Jason J. Barrett approached Medina from behind and struck him on the right side of the head with a baton. The strike resulted in one-and-a-half inch laceration on Medina's head. Medina did not provoke Barrett.

After the incident, Defendants Barrett and D. McKeel filed false misbehavior reports in which they misrepresented the altercation. Specifically, Barrett and McKeel falsely reported that

---

[3] The Court takes the following allegations from Plaintiff's Complaint, ECF No. 1, and accepts them as true. *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011).

[4] Keratoconus is a condition in which the cornea bulges like a cone, resulting in blurred and distorted vision. Kierstan Boyd, *What Is Keratoconus?*, American Academy of Ophthalmology, Sept. 1, 2017, https://www.aao.org/eye-health/diseases/what-is-keratoconus.

[5] Vogt Striae are folds that develop at the apex of the cone that occurs when an individual has keratoconus. Robert S. Feder, M.D., *Vogt striae*, American Academy of Ophthalmology, accessed Feb. 2, 2018, https://www.aao.org/image/vogt-striae.

[6] Photophobia is light sensitivity. Kathleen B. Digre, M.D., *Photophobia – What Is It? Can It Be Treated?*, American Migraine Foundation, Sept. 22, 2016, https://americanmigrainefoundation.org/understanding-migraine/photophobia-what-is-it-can-it-be-treated/.

[7] Monocular diplopia is double vision in one eye. *Double Vision (Diplopia)*, Harvard Health Publishing, Harvard Medical School, Aug. 2014, https://www.health.harvard.edu/childrens-health/double-vision-diplopia-.

[8] In amblyopia, also known as "lazy eye," vision in one eye is reduced because the eye and brain are not working together properly. *Amblyopia*, National Eye Institute, accessed Feb. 2, 2018, https://nei.nih.gov/health/amblyopia. Consequently, the brain favors the other eye. *Id.*

[9] Glaucoma is a condition that damages the optic nerve in the eye, and can lead to blindness without early treatment. Kierstan Boyd, *What Is Glaucoma?*, American Academy of Ophthalmology, Mar. 1, 2017, https://www.aao.org/eye-health/diseases/what-is-glaucoma.

Medina lunged and threw punches at Barrett, and Barrett struck Medina with his baton in response. Because of these false reports, Medina was placed in the SHU.[10]

Medina was served with the misbehavior report on August 13, 2012, and was not able to read it until September 19, 2012, a month after the hearing began. Consequently, he was unable to challenge his pre-hearing SHU confinement.

On August 18, 2012, Defendant Thomas Sticht held a disciplinary proceeding regarding various rule violations charged to Medina because of the incident. Before the proceeding, Medina was not provided with access to disability accommodations, specifically, a CCTV magnifier and documents in 32-point font. At the proceeding, Barrett testified by phone. His testimony conflicted with reports he filed previously. In the reports, he alleged that he struck Medina because Medina lunged at him; at the proceeding, he stated that he struck Medina to stop Medina's altercation with the other prisoner. He further explained that he used a back-handed strike to hit Medina in the shoulder, but accidentally struck his head.

Testimony from other witnesses and other evidence presented contradict Barrett's version of the incident. The prisoner involved in the altercation testified that he started the altercation by attempting to punch Medina. Medical evidence demonstrated the location and angle of Medina's head laceration could not have come from a back-handed baton strike.

Sticht concluded the disciplinary proceeding on October 19, 2012, and found Medina guilty of three of the five charged rule violations. He imposed a six-month term in the SHU.

Medina appealed Sticht's decision, alleging that Sticht violated Medina's due process rights by failing to (1) call relevant and material witnesses, (2) provide Medina with adequate

---

[10] "Special Housing Units (SHUs) are housing units in Bureau institutions where inmates are securely separated from the general inmate population, and may be housed either alone or with other inmates." *United States v. D.W.*, 198 F. Supp. 3d 18, 76 (E.D.N.Y. 2016).

notice, (3) hear Medina timely and meaningfully, (4) provide notice to the superintendent regarding Medina's placement in the SHU, and (5) provide Medina with reasonable and adequate accommodations for his visual disability.

At the appeal hearing, Sticht allowed Barrett to testify over the phone, but recorded Medina's witnesses before the hearing and played their testimony in Court. Consequently, Medina could not hear the testimony and could not ask follow-up questions.

Sticht denied Medina's appeal. *See* ECF No. 1 at 10. Medina then spent 60 days in the SHU. On December 18, 2012, Sticht's decision was reversed and expunged.

While in the SHU, Medina was denied access to disability accommodations.[11] Consequently, Medina could not use the required forms to request and obtain medical care under Defendant R. Killinger's policy.

## DISCUSSION

### I. Motion to Dismiss

Motions to dismiss under Rule 12(c)[12] command the same standard as a motion to dismiss under Rule 12(b)(6). *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 429 (2d Cir. 2011).

A complaint will survive a motion to dismiss under Rule 12(b)(6) when it states a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)). A claim for relief is plausible when the plaintiff pleads sufficient

---

[11] These include access to the Sensorial Disability Program's Resource Room; a CCTV magnifier; a computer with software for individuals with visual disabilities; personal and legal documents stored electronically; SARA reading scanner; documents with 32-point font and the ability to create documents with that size font; mobility aide; sighted guide; guidance cane; Free Matter for the Blind postage; large print forms; help completing forms; reading assistance; 20/20 sight-saving pens; bold-lined paper; light bulb; audio books; and effective and adequate alternatives to these accommodations. ECF No. 1 at 11.

[12] Medina claims that Defendants motion to dismiss is untimely under Rule 12(b) because it was filed after the pleadings closed. ECF No. 51 at 11-12. If Defendants had filed their motion under Rule 12(b), that would be correct. Defendants, however, filed it under Rule 12(c), which does not require the Defendants to file the motion before the pleadings are closed.

6

facts that allow the Court to draw reasonable inferences that the defendant is liable for the alleged conduct. *Ashcroft*, 556 U.S. at 678.

In considering the plausibility of a claim, the Court must accept factual allegations as true and draw all reasonable inferences in the plaintiff's favor. *Faber*, 648 F.3d at 104. At the same time, the Court is not required to accord "[l]egal conclusions, deductions, or opinions couched as factual allegations . . . a presumption of truthfulness." *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007) (quotation marks omitted); *see also Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir. 1987) ("As we have repeatedly held, complaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning.").

When considering a motion to dismiss a *pro se* complaint, "courts must construe [the complaint] broadly, and interpret [it] to raise the strongest arguments that [it] suggest[s]." *Weixel v. Bd. of Educ. of N.Y.C.*, 287 F.3d 138, 146 (2d Cir. 2002) (quoting *Cruz v. Gomez*, 202 F.3d 593, 597 (2d Cir. 2000)). "This is especially true when dealing with *pro se* complaints alleging civil rights violations." *Id.* (citing *Weinstein v. Albright*, 261 F.3d 127, 132 (2d Cir. 2001)) (italics added). Accordingly, a court must interpret a plaintiff's allegations to "raise the strongest arguments that they suggest." *Id.* (quoting *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999)) (internal quotation marks omitted). The Court now considers Defendants' motion to dismiss Medina's fourth and eleventh claims: conspiracy to file false misbehavior reports and denial of medical care.

a.  **Conspiracy to File False Misbehavior Reports**

Under the Fourteenth Amendment, inmates may not be deprived of liberty without due process of law. *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986). Provided that prison

7

officials follow basic procedures, however, there is no Fourteenth Amendment violation even if an inmate is falsely accused of conduct that results in a deprivation of liberty. *Freeman*, 808 F.2d at 952-53. These basic procedures are:

> (1) advance written notice of the charges at least 24 hours before the hearing; (2) the opportunity to appear at the hearing, to call witnesses, and to present rebuttal evidence; and (3) a written statement by the factfinders as to the evidence relied on for their decision, and the reasons for the prison committee's action.

*Id.* at 953 (citing *Wolff v. McDonnell*, 418 U.S. 539, 564-66 (1974)). Prison officials thus have wide latitude in disciplining inmates as long as minimum constitutional procedures are followed. *Franco v. Kelly*, 854 F.2d 584, 590 (2d Cir. 1988).

Nevertheless, that "wide latitude" does not include "conduct that infringes on an inmate's substantive constitutional rights." *Id.* (holding that filing false disciplinary charges against a plaintiff in retaliation for exercising his First Amendment rights to access the courts and petition for redress of grievances implicates Section 1983). Those substantive constitutional rights include "the First Amendment [and] the Eighth Amendment." *Id.* (noting that the Eighth Amendment right to be free from cruel and unusual punishment is "an important constitutional right") (citations omitted).

Indeed, this Court has previously held that a plaintiff plausibly stated a claim for which relief may be granted under *Franco* and Section 1983 when he alleged that prison officials filed false misbehavior reports against him to conceal a violation of his Eighth Amendment rights. *Winston v. Coughlin*, 789 F. Supp. 118, 121 (W.D.N.Y. 1992).

Here, Medina's fourth claim plausibly states a claim for which relief may be granted. Medina alleges that Defendant Barrett used excessive force against him, in violation of his Eighth Amendment rights, and that Defendants Barrett and McKeel later conspired to conceal that violation by filing false misbehavior reports against Medina. Medina's allegations even go beyond

8

those alleged in *Winston*—in that case, the plaintiff had not directly alleged that he was beaten. *Id.* He had only alleged that the defendants filed false misbehavior reports to cover up an Eighth Amendment violation. *Id.* This Court allowed the claim to survive a motion to dismiss *even though* the plaintiff had not actually alleged an Eighth Amendment violation. *Id.*

> [T]he Complaint does not allege that plaintiff himself was physically beaten in violation of the Eighth Amendment[, but] plaintiff may be attempting to claim that he was beaten and that defendants filed a false misconduct report against him to conceal this 'gross misconduct.' If this is the case, then such actions may implicate plaintiff's substantive Eighth Amendment rights within the meaning of *Franco*, and plaintiff may be able to prove some set of facts in support of his claim which would entitle him to relief. Therefore, the motion . . . to dismiss the complaint is denied.

*Id.*

Here, Medina alleges that he was beaten in violation of his Eighth Amendment rights *and* that Defendants Barrett and McKeel filed false misbehavior reports against him to conceal the violation. Defendants' only counter arguments are (1) an out-of-context citation to *Freeman* incorrectly claiming that inmates cannot, under any circumstances, plausibly state a claim based on a false misbehavior report, and (2) an incorrect analysis of *Winston*.[13] Consequently, Defendants' motion to dismiss Medina's fourth claim is DENIED.

### b. Denial of Medical Care

To establish an Eighth Amendment violation for inadequate medical treatment, Medina must plausibly allege that Defendant R. Killinger acted with deliberate indifference to his serious medical needs. *See Spavone v. New York State Dep't of Corr. Servs.*, 719 F.3d 127, 139 (2d Cir.

---

[13] Defendants argue that *Winston* "explicitly" holds that an allegation that prison officials filed false misbehavior reports to conceal an Eighth Amendment violation does not implicate a substantive constitutional right. ECF No. 54 at 2. This is wrong. This Court held that, "*[t]aken in isolation*, as would normally be proper in a motion under Rule 12(b)(6), this allegation does not implicate a substantive constitutional right." *Winston*, 789 F. Supp. at 121 (emphasis added). The Court went on to explain that since it "must liberally construe plaintiff's *pro se* complaint," the allegation survives the motion to dismiss. The Court reminds defense counsel both that Medina is a *pro se* plaintiff and that, under Rule of Professional Conduct 3.3, "[a] lawyer shall not knowingly make a false statement of fact or law to a tribunal . . . ."

2013) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). A deliberate indifference claim has two prongs—one objective and one subjective. *Id.* Under the objective prong, a plaintiff must plausibly allege that the "deprivation of adequate medical care [was] sufficiently serious." *Id.* (quoting *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006)) (quotation marks omitted). For the subjective prong, he must plausibly allege that "the charged official [acted] or [failed] to act while *actually aware* of a substantial risk that serious inmate harm will result." *Id.* (quoting *Salahuddin*, 467 F.3d at 279) (emphasis* in quotation).

Deprivation of medical care is sufficiently serious when prisoners allege "serious physical pain over an extended period of time." *Dennis v. Milicevic*, No. 97 CIV. 7147(HB), 1998 WL 474200, at *3 (S.D.N.Y. Aug. 13, 1998) (citing *Hathaway v. Coughlin*, 37 F.3d 63, 67 (2d Cir. 1994)). The Second Circuit has found that experiencing serious pain over six months to several years sufficient to satisfy the objective prong of a deliberate indifference claim. *See, e.g.*, *Chance v. Armstrong*, 143 F.3d 698, 702-03 (2d Cir. 1998); *Hathaway*, 37 F.3d at 67.

Here, Medina failed to plausibly allege a sufficiently serious deprivation of medical care. In his Complaint, he alleges that he experienced "severe and chronic headaches, nerve damage, and neck and knee pain" from "August 13, 2012 to the first week of September 2012" because he was denied medical care.[14] ECF No. 1 at 15. The period from August 13, 2012, to the first week of September 2012—four weeks—is too short to satisfy the objective prong.

Moreover, most of the individual conditions Medina alleges are insufficient to satisfy the objective prong. Severe and chronic headaches over a period of four weeks are insufficient. *See,*

---

[14] Defendants twice claim that Medina identifies no "injury suffered as a result" of denied medical care. ECF No. 38-1 at 4; ECF No. 54 at 3. This is incorrect. Medina clearly alleges the injuries he received that went untreated because of the alleged denial of medical care. ECF No. 1 at 15. Moreover, as explained above, experiencing pain over an extended timeframe can constitute a sufficiently serious denial of medical care. Consequently, Medina need not allege an injury resulting from the alleged denial of care.

*e.g.*, *Sledge v. Bernstein*, No. 97 CIV. 7147(HB), 2012 WL 4761582, at *5 (S.D.N.Y. Aug. 2, 2012); *Milicevic*, 1998 WL 474200, at *3. Nerve damage is also insufficient when experienced over four weeks. *Ambrose v. Dell*, 12-CV-6721 (JPO), 2016 WL 894456, at *1-2 (S.D.N.Y. Mar. 8, 2016). And courts in the Second Circuit have consistently found knee injuries insufficient to satisfy the objective prong of a deliberate indifference claim. *Taylor v. Kurtz*, No. 00–CV–700F, 2004 WL 2414847, at *4 (W.D.N.Y. Oct. 28, 2004).

It appears that no courts have specifically addressed neck pain in the context of a deliberate indifference claim. However, the Court reiterates the reasoning explained in *Milicevic*—claiming to feel severe and chronic neck pain over four weeks is insufficient to plausibly allege the objective prong. Accordingly, Defendants' motion to dismiss Medina's eleventh claim for deliberate indifference is GRANTED and the claim is DISMISSED.

## II. Motion to Appoint Counsel

Under 28 U.S.C. § 1915(e)(1), the court may appoint counsel to assist indigent litigants in civil cases. *Sears, Roebuck & Co. v. Charles W. Sears Real Estate, Inc.*, 865 F.2d 22, 23 (2d Cir. 1988); *In re Martin-Trigona*, 737 F.2d 1254, 1260 (2d Cir. 1984). When a court considers a motion to appoint counsel, it should first determine whether the complaint makes "a threshold showing of some likelihood of merit." *Hendricks v. Coughlin*, 114 F.3d 390, 392 (2d Cir. 1997) (quoting *Hodge v. Police Officers*, 802 F.2d 58, 61-62 (2d Cir. 1986)). If so, the court should then consider other relevant factors, including "the indigent's ability to investigate the crucial facts, whether conflicting evidence implicating the need for cross-examination will be the major proof presented to the fact finder, the indigent's ability to present the case, the complexity of the legal issues[,] and any special reason" warranting the appointment of counsel. *Hendricks*, 114 F.3d at 392 (quoting *Hodge*, 802 F.2d at 61-62). Each case should be determined on its own facts, and no single factor

11

is controlling. *Hodge*, 802 F.2d at 61; *see also Hendricks*, 114 F.3d at 394 (stating that the relevant factors "really amount to evaluating [the plaintiff's] ability to manage his case effectively on his own").

Here, the Court declines to appoint counsel for Medina. Medina's Complaint does show "some likelihood of merit," but the factors the Court must consider weigh against appointing counsel for Medina. At this point, it is unclear whether Medina will need to provide most of his proof to the fact finder through cross-examination, but if he must do so the Court is confident that he can do so effectively. Medina has now litigated two cases before this Court, providing it with a great deal of familiarity with Medina and his abilities. The Court can say definitively that Medina's ability to analyze complex legal issues, investigate crucial facts, perform legal research, write motions, and present his case effectively is excellent.

The only factor that favors appointing counsel is Medina's visual disability. The Court has taken great pains to ensure that Medina's disability is accommodated and it will continue to do so. Medina, however, maintains that his disability and Defendants' reluctance to accommodate it hinder his ability to litigate the case effectively. *See* ECF No. 61. The Court, however, notes that it received Medina's response to the motion to dismiss with little delay, and Medina's response was well researched, organized, and written. The Court will continue to address any of Medina's requests for accommodations as they arise, but the Court's evaluation of the factors outlined above shows that he is not entitled to appointed counsel.

Finally, the Court notes that it granted Medina's motion to appoint counsel and provided very capable counsel for him. *See* ECF Nos. 16, 22. The lack of Medina's cooperation led appointed counsel to withdraw. The Court warned Medina at that time that new counsel would not be appointed. *See Barnes v. Alves*, 10 F. Supp. 3d 382, 385 (W.D.N.Y. 2014) (denying motion

to appoint counsel where plaintiff's previously appointed counsel withdrew and plaintiff showed ability to litigate case effectively). Accordingly, Medina's motion to appoint counsel is DENIED.

**CONCLUSION**

For the foregoing reasons, Defendants' motion to dismiss, ECF No. 38, is GRANTED IN PART and DENIED IN PART, and Medina's motion to appoint counsel, ECF No. 58, is DENIED. Medina's eleventh claim alleging denial of medical care is DISMISSED. All other claims remain and no Defendants are dismissed from the case.

By separate Order, this case will be referred to a United States Magistrate Judge for pretrial proceedings.

IT IS SO ORDERED.

Dated: March 19, 2018
       Rochester, New York

                                          HON. FRANK P. GERACI, JR.
                                          Chief Judge
                                          United States District Court